We will hear counsel in Barone v. United States. Mr. Weissman. Go ahead, Mr. Weissman. May I please the court? My name is Mark Weissman of the firm Herzfeld & Rubin. I'm counsel for the plaintiff appellant Joseph Barone. For some 18 years prior to the events leading up to this action, Mr. Barone faithfully served as a confidential informant for the FBI in connection with the New York area organized crime investigations. Now, it's undisputed in this case that Mr. Barone was an extremely reliable and trusted productive source for the FBI during that long period. And it's further undisputed that Mr. Barone performed this service for the United States at great risk to his personal safety and for minimal compensation from the United States. That's not the question, of course, right? That's the beginning. It's our contention, supported by a substantial… He could have begun with his date of birth. It's our contention, supported by substantial evidence, that for the latter decade of Mr. Barone's service, the FBI specifically authorized him to engage in certain criminal activity for the purpose of maintaining his credibility among organized crime associates and ultimately, of course, to be able to use that credibility to provide actionable information for the FBI. And he did, in fact, do that. Did he tell Cooks that the murder in question was to be committed in January 2009? He was recorded… I think the answer to that is yes. He was recorded saying… He was indeed arrested on January 9, right? Yeah, he was arrested on a Friday after a recorded call with Mr. Cooks. And what exactly, if it's a matter of record or appropriate before us, what exactly was he planning to tell the FBI about the conspiracy? I'm sorry? What exactly was he planning to tell the FBI about this conspiracy? My client testified at his criminal trial that there was no conspiracy, that the entire conversation with Mr. Cooks as well as with his co-defendant… Yes, but the issue is, among other things, was there probable cause? That's right. But even apart from the grand jury indictment, which you challenged in any other number of ways, isn't there plenty of probable cause? I'm not… You know, your client was ultimately acquitted, but isn't there plenty of evidence of probable cause that your client was doing something because of which he could be indicted and arrested? So, Your Honor, the probable cause here for the arrest is based on, we can generously say, exigent circumstances that these, if we credit the FBI's story, that they arrested Mr. Barone after recording him on a phone call saying some very gruesome things. But once they arrested him and got him back to the station and began to look at their files, what they should have realized is that he's an informant, that he regularly was… The fact that he's an informant doesn't give him a license to do everything, and there was plenty of evidence that he was doing things beyond what an informant should do. Now, I'm not saying he was guilty. He was acquitted. But wasn't there enough so that all the things that you are… I mean, it's your suit now complaining. It's not a question of where a conviction stands or something of that sort. The question is whether your suit, that what they did to you was so wrong, that you have a Bivens action, that you have a federal… You know, that you have all sorts of actions for damages. So the easy answer to that… It's not easy, but the quick answer to that question is that there's an FBI report called a Form 302 in this case where it shows that Mr. Barone reported on the exact same plot nine years earlier. Now, that report was never produced to the prosecution in this case. And at a minimum, it raises a question of fact as to whether the FBI was aware of facts that would have defeated or negated a probable cause after his arrest. And then the second thing, of course, Your Honor, is… Why does the fact that he reported on something earlier and was not involved or was behaving properly on that earlier get rid of probable cause? Just probable cause for arrest later when there is evidence that he wasn't reporting this one. It wouldn't be probable cause for arrest. In this case, it's probable cause for… For… To prosecute him. The fact, again, nine years earlier, he was behaving as he should have. There is evidence, suggestion, that he was not behaving as he should have now. He gets acquitted of it, but why does the fact that earlier he was behaving as he should have mean that you can't, don't have any probable cause for doing what you did now? I just, I mean, I'm sorry, I don't understand. The way we allege and we believe that there's facts in the record to show that the FBI willfully ignored evidence of, you know, exculpatory evidence, evidence that there was no probable cause and they had a duty to examine, meaning if their basis… One other thing, I'm sorry, I just forgot to… In addition to that Form 302, there was also years of formal FBI authorization to engage in what they call criminal conversations about various things. So there was more than just the one piece of paper in there. There was a substantial record of this informant, my client. Plenty of evidence that your client was allowed to do certain things which, let's say, are at the very fringe or beyond criminality. I don't doubt that there's evidence. The question is, is there evidence on the basis of which a prosecutor could go on and say there is probable cause of a violation here, whatever that is. That's my question. And my answer to the question is that that should be a question of fact for the fact finder at trial because there is sufficient evidence that there's an absence of probable cause. There's evidence that material exculpatory evidence was withheld from the grand jury. It was only produced on the eve of trial, at least with respect to that Form 302, and that the district court gave too much weight to the defendant's contention that he wasn't authorized. If this court looked at the evidence and concludes that he was authorized, then everything else, the entire basis for probable cause falls apart because he was authorized. Meaning if defendants conceded that he was authorized on the day he was arrested and then proceeded to prosecute him, I think the court would have no problem saying there was no probable cause. So it really comes down to whether he was authorized on that day. Thank you. You have reserved some time. Thank you. Ms. Tinio. Good morning, and may it please the Court. My name is Rebecca Tinio, and I represent the defendants in this case. The district court correctly determined that there is no genuine issue of material fact as to Mr. Barone's claims relating to his prosecution and detention, and also that his negligence claim was barred by the discretionary function exception. This is the third time that Mr. Barone has asked this court to examine the facts and circumstances relating to his prosecution from murder for hire. Most recently, this court rejected Mr. Barone's post-trial Hyde Amendment claim, holding that the claim could not succeed where the government had solid evidence of Mr. Barone's guilt and there was no evidence of significant dishonest or abusive conduct by the government. The court should reject Mr. Barone's latest claims as well. I'll start by quickly pivoting to two specific points that my adversary brought up to this panel. First, my adversary brought up this 2000 Form 302 about a previous murder for hire plot that Mr. Barone reported to his FBI handler, and my adversary said that that was the exact same plot that he reported, I'm sorry, he didn't report, that the FBI discovered in 2009, and he also said that that Form 302 was somehow buried and only produced on the eve of trial. And both of those contentions are not supported by the record. It is only in one document, Mr. Barone's post hoc self-serving affidavit, that he filed in opposition to the government's summary motion in this case, where Mr. Barone said, oh, I now know that that was the same plot. There was absolutely no evidence otherwise. There's also absolutely no evidence that this Form 302 relating to the 2000 plot was hidden, buried, withheld, no evidence of that at all. It was produced as 3500 material far before the government had to do that in advance of Mr. Barone's trial, and the lying AUSA who had Mr. Barone's criminal case in early 2009 said that he could have accessed that file. It was available to him. He was sure he could have accessed it. And more importantly, I believe, as Your Honor raised, that Form 302 in 2000 in no way shows that Mr. Barone was authorized to do what he did in this case, to do what he was charged with, contacting a third-party criminal completely unknown to the FBI, giving that criminal money, victim information, instructing that third-party criminal to surveil the victim's house, discussing that the crime should be carried out as a home invasion, promising to give him money, telling him the crime had to happen soon. None of that was ever reported to the FBI. My adversary- What was the back story on why, in theory, it had to be done in January or soon? Mr. Barone testified at his criminal trial that in December of 2008, which was six months after he had first discussed this insurance plot with Tony Piliero, that Tony Piliero called Mr. Barone and said, hey, you know, this insurance policy that I took out on the victim, it's going to be up soon. It's going to be up in February 2009. And one of the recorded conversations that's in the record between Mr. Barone and Mr. Cooks shows Mr. Barone saying to Mr. Cooks, this policy is going to come due next month. We've got to get this thing done. If we don't get this thing done in the next few weeks, that's it. No one's going to get paid. So Mr. Barone conveyed that urgency to Mr. Cooks during the recorded call. The other piece of record evidence that my adversary pointed to were the numerous pieces of paperwork in Mr. Barone's file that were also produced as 3500 material, showing that he was authorized at points by the FBI to conduct criminal conversations. And as Your Honor said, there is plenty of evidence showing that, at least for periods of time, he was authorized to do that. But those authorizations rebut the notion that he was allowed to do what he did in this case and what he was charged with. Those authorizations say he could not initiate or instigate a plan to commit a crime, which he did here. Those authorizations say that he had to report promptly to his handler when he learned of criminal activity, especially violence. He did not do that here. He initiated and instigated a plan with a third-party criminal, wholly unknown. Can you explain to me how somebody who is somebody in this situation, in the mob, doing things, is going to be able to live up to the precise things of these forms? I find it kind of wild to note that somebody who is there looks at the form and says, I'm allowed to do this but not allowed to do that. Now, that doesn't go, I think, to the question in this case. But the notion that somebody who is in that situation should be able to live up to a bureaucratic set of forms strikes me as ludicrous. I hear you, Judge Calabresi. I think one response to that is that he was given these instructions. What is it that you're hearing? I'm sorry? I would say, first of all, he was given these types of instructions and ammunitions a lot, numerous times. For a period of six years, he got them every three months. For a period of about 15 years, he was given them every year. We also know that he signed his code name to a lot of these forms. We have his handler's deposition testimony explaining how he would go through these things. And, in fact, we even have Mr. Barone's own affidavit where he says, you know, yeah, there was some paperwork. I knew generally there were some things I wasn't supposed to do. I knew that I shouldn't commit violence or, you know, commit a theft. But I was allowed to do, in fact, as my adversary said, quote, unquote, certain criminal activity. He's very vague about this, but he himself acknowledges that he knew that he wasn't supposed to actually commit crimes. That's really not in dispute. And, again, he's conceded that he never told the FBI a thing about this murder for plot that he was planning between the summer of 2008 until it was apprehended in January 2009. We're happy, I think, to rely in large part on our briefs at this point. As we say in our briefs, in fact, there's a presumption of probable cause in this case because there was indictment. But the district court also found that there was actual probable cause for the prosecution, which is a complete defense. And Mr. Barone does not actually even address the other elements in his opening brief. But we argue that the other elements also, there's no triable fact, initiation, continuation of the prosecution, or malice. The very same body of evidence also shows that the agents here certainly had qualified immunity for their conduct in this case. There is absolutely no evidence of punitive intent that Mr. Barone should be put in the special housing unit. That was not a decision that our agents were even involved in. There was absolutely no evidence to meet the very high standard for intentional motion of emotional distress. And the district court correctly ruled that it did not have subject matter jurisdiction to entertain the negligent infliction of emotional distress claim. If there are no further questions, we're happy to rest. I thought you might just give us a quick overview of the procedural history. You referred to the earlier consideration of some of these matters. Your appendix, well, the special appendix includes not only Magistrate Judge Peck's opinion and order. He apparently was acting pursuant to an agreement that he could handle the whole case. Before that, you've given us the benefit of opinions by Judge Kaplan and Magistrate Judge Dollinger. Can you just briefly indicate what it is that they found which might be relevant here? Judge Dollinger's R&R and Judge Kaplan's opinion adopting in part and supplementing in part that R&R are relevant only to the negligent infliction of emotional distress claim. That claim did not go through summary judgment to Judge Peck. And so in Judge Dollinger's opinion on that point, or rather his R&R, that's where he lays out his discretionary function analysis. And in Judge Kaplan's subsequent opinion, he adopts that. Thank you. Thanks very much. You've reserved some time, sir. Thank you, Judge. Just to illustrate Judge Calabresi's point, they are trying to hold my client to a very high standard of legal expertise and parsing words. The reporting in 1999 that was documented in the form 302 in the year 2000 shows that when he was approached by Mr. Pallaro, again, the same person he was charged later with, Tony Pallaro, he didn't just run right to the FBI and report Pallaro. He had conversations with Mr. Pallaro about raising some money. Let me see if you can see what you can do. In other words, this whole initiated or these are conversations. You can characterize anything as initiated. What he was doing for 18 years was having ugly conversations with organized crime figures. And that's what he was doing on the day he was arrested. With respect to the contention that, oh, we can't rely on an affidavit filed by the plaintiff in this case, I mean, the court below has a duty to credit the client's affidavit on the motion for summary judgment against him. So it was entirely appropriate, although the judge didn't do it, to rely on my client's testimony in the case. They had every opportunity to depose him and challenge anything he said. But he does confirm the form 302 itself contains the same cast of characters. It involves what they say is a guy in Connecticut, which is ultimately the intended victim of the supposed plot later. It involves Mr. Pallaro. And my client testified that it was over insurance. And there's more detail about that because the conversations were coming up in the context of an employee who passed away of natural causes. So it was not just a made-up, after-the-fact explanation. This is exactly what happened. It was the same plot, just many years later. Thanks very much.  We will reconvene within perhaps half an hour to hear another case with another panel. Thank you very much.